AARON BAER ET AL., LATE PARTNERS,

V.

LOUIS LICHTEN.

*Agency—Transfer of Note—Unauthorized Indorsement—Ratification— What Necessary to Charge Indorser—Insolvency of Maker—Burden of Proof.*

1. Where a principal accepts and retains the proceeds of a note, knowing that it was transferred by his agent upon an unauthorized indorsement, he thereby ratifies such indorsement.

2. In order to charge the indorser of a promissory note the holder must use due diligence.

3. Where a note is assigned after maturity, to charge the indorser, the assignee must bring suit against the maker at the first term of court, unless he can show that such suit would be unavailing or that the maker had absconded when the note was assigned.

4. Where the plaintiff in a suit against the indorser relies upon the insolvency of the maker, the burden is upon him to show that such insolvency continued until the commencement of the suit.

[Opinion filed October 5, 1887.]

APPEAL from the Circuit Court of St. Clair County; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Mr. WILLIAM WINKELMANN, for appellants.

Appellee knew that he had not requested nor had appellants agreed to indorse the note, yet with this knowledge, when the note is presented to him as agreed on, and the exchange about to be made, he urges and persuades the servant of appellants, and unknown to them, to make another contract, to wit, the indorsement in question, which is not merely a transfer of the note, but is a fresh, independent and substantive contract, embodying all the terms of the instrument indorsed.    1 Daniel on Neg. Instruments, page 533 to 538.

In the case of Gerrish v. Maher, 70 Ill. 470, the court say: "When an agent is employed mainly to carry out and perform a contract already made by his principal, he is not authorized to change the contract or to make a new one."

In Garrity v. Bells, 20 Ill. App. 327, the court say: "If at the time a promissory note falls due, proceedings against the maker would be unavailing, the holder may proceed immediately against the indorser; but if he will not do this he must be prepared, in order to fix the liability of the indorser, to show that the insolvency of the maker continued down to the time of the commencement of his suit against the indorser." Bledsoe v. Graves, 4 Scam. 382; Phillips v. Webster, 85 Ill. 146.

Messrs. WILDERMANN, HAMILL & RICKERT, for appellee.

The mules, together with the $3,300 note of Lichten, were delivered by Reifschneider to the firm of Baer Bros. & Wohlgemuth, together with the information in what manner he had indorsed the Fults note to Lichten.    They made no effort to rescind the unauthorized acts (as claimed) of their agent in any part of this transaction, but on the contrary appropriated the property to their own use, and by their open and approved acts affirmed and ratified his conduct as agent in the whole proceedings.    Ward v. Williams, 26 Ill. 447; Johnston v. Berry, 3 Ill. App. 256; Meister v. Cleveland Dryer Co., 11 Ill. App. 227.

A principal can not enjoy the benefits arising from the act of his agent without adopting the instrumentality by which it was accomplished.   McBean v. Fox, 1 Ill. App. 177; Elwell v. Chamberlain, 31 N. Y. 611 ; Smith v. Tracy, 36 N. Y. 79.

An agent empowered by his principal to do a particular act must necessarily be invested with the unlimited authority and means to perform and execute the act.   Noble v. Nugent, 89 Ill. 522.

WILKIN, J.   This is an action of assumpsit brought by appellee against appellants as indorsers to him of a promissory note made by Valentine Sigerte and Jacob C. Fults, June 5, 1883, for $415, due twelve months after date, payable to Loewenstein, Baer & Bro., and by them assigned to appellants.

The assignment upon which this suit is brought is " Baer Bros. & Wohlgemuth, S. Reifschneider, agent," and was made August 25, 1885.   On the trial in the Circuit Court appellee obtained judgment for the amount due on the note and appellants bring the case up by appeal.

It is insisted, first, that there is no proof of the agency of S. Reifschneider and that therefore appellants can not be held liable as indorsers.

It appears that appellee got the note in payment for a span of mules, the price of which was $300, he giving his note to appellants for $33, the amount then due on the assigned note above the price of the mules.   Appellee testified that he made the trade with Aaron Baer, one of the appellants, who could not come after the mules himself but said "I will send my agent, Reifschneider, and he will do as well as I will."   In this he is corroborated by James Matthews and Wm. Fults.   Reifschneider did call for the mules and deliver the note, taking the $33 note in appellant's name, and at the request of appellee made the assignment above mentioned.   He testifies, however, that he had no authority for so doing, as does Amson and Aaron Baer.   They claim that one George Schab was sent with the note and to return the mules, and that Reifschneider was not in their employ but went at the request of Schab. There is unquestionably a sharp conflict in the evidence on

this question and if it depended upon the express agreement of the parties as to who should transact the business, it might well be doubted whether there is sufficient authority shown in the agent to bind appellants, but it does clearly appear that they accepted the mules and the small note, and, with full knowledge of the fact that the note was indorsed by Reifschneider as their agent, have retained both, and at no time offered to return them. In fact, they transferred the $33 note and it was collected off of appellee.

There need be no citation of authorities in support of the position that if the property obtained by the indorsement of the note was retained by appellants with a full knowledge of the facts, such conduct would amount to a ratification of the act of the agent, although unauthorized at the time it was done. It is contended by appellants that, inasmuch as one of their firm told appellee that he wanted it distinctly understood that they were not liable for the note, that they thereby repudiated the act of the agent. It is shown, however, that in the same conversation this member of the firm inquired of appellee why he was so particular as to make Reifschneider indorse the note, saying, "We always indorse without recourse," thereby showing a knowledge of the fact that appellee had required the indorsement before surrendering the property and giving his note. Clearly, he could not then repudiate the agency by which the indorsement was made and the property obtained, and, at the same time, keep the proceeds. We find no warrant in the evidence for the position that the trade was completed between appellee and Amson Baer, and that, by its terms, appellee was bound to take the note unindorsed. There is nothing to show any such understanding.

The second ground of reversal urged is, that appellee has failed to prove due diligence on his part in attempting to collect the note from the makers. He got the note on the 25th day of August, 1885, and it was then past due.

In order to show due diligence by suit, it was necessary that he should bring his action to the next term of the court having jurisdiction, and to have prosecuted it to judgment at

the earliest period within his power, had execution issued, etc. Robinson v. Olcoff, 27 Ill. 181.

The next term of court in that county, to which he could have sued on the note, began on the fourth Monday of September, A. D. 1885, and no reason whatever is shown for not so doing. Suit was delayed until the January term, A. D. 1886, of the County Court.

Diligence by suit has not, therefore, been shown. It then devolved upon appellee, under the other allegations of his declaration, to show that the maker, Sigerte, had absconded and left the State when the note was assigned to him, or to show that both the makers were insolvent. Pierce v. Short, 14 Ill. 144. Whatever may be said as to the proof of Sigerte's absence from the State or his insolvency, we think there is an absence of proof that a suit against Jacob Fults at the September term, A. D. 1885, would have been unavailing. Appellee swears that at the time he got the note he thought him good; that it turned out he was insolvent, " had nothing when the suit was brought against him." When he became insolvent he does not pretend to state. The attempt to supply the omission in his testimony in chief by showing on his re-examination by parol that Jacob Fults had conveyed his interest in certain real estate prior to 1885, is unavailing for two reasons: First, the evidence was incompetent, and, second, it nowhere appears that between the time appellee got the note, and the suit, in January, 1886, he did not have other property than the real estate out of which the debt could have been collected.

Again, there is no proof whatever of Fults' insolvency from April 25, 1886, to the date of bringing this suit, a period of about one year. Having failed to show diligence by suit to the first term after he got the note, the burthen of proof is upon appellee to show that the insolvency of the makers continued down to the time of the commencement of this suit. Bledsoe v. Graves, 4 Scam. 382. This is not done by showing a return of execution *nulla bona* a year before. For want of proof of due diligence by suit and of the insolvency of Jacob C. Fults, one of the makers of the note, the judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*